IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| AMERICAN CASUALTY COMPANY )<br>OF READING, PENNSYLVANIA; )<br>NATIONAL FIRE INSURANCE )<br>COMPANY OF HARTFORD; and )<br>TRANSPORTATION INSURANCE )<br>COMPANY, )<br>                      )<br>    Plaintiffs, )<br>                      )<br>    v. )<br>                      )<br>SKILSTAF, INC, and )<br>PACA, INC., )<br>                      )<br>    Defendants. ) | CIVIL ACTION NO.<br>3:08cv333-MHT<br>(WO) |

OPINION AND ORDER

Plaintiffs American Casualty Insurance Company of Reading, Pennsylvania, National Fire Insurance Company of Hartford, and Transportation Insurance Company bring this lawsuit against defendants Skilstaf, Inc., and PACA, Inc., asserting claims related to workers' compensation insurance programs. Jurisdiction is proper under 28 U.S.C. § 1332 (diversity).

This case is now before the court on the defendants' motion to dismiss. For the following reasons, the motion will be denied.

I. BACKGROUND

Skilstaf sued Continental Casualty Company in state court in 2003. The dispute revolved around workers' compensation insurance programs in effect from 1996 through 2000. In 2004, Continental filed a counterclaim concerning those programs and, in addition, asserting claims for programs from 2001 and 2002. In 2008, Continental unsuccessfully attempted to remove this long-running state litigation to federal court. Shortly after that, the instant federal lawsuit was filed by the plaintiffs--three wholly owned subsidiaries of Continental--asserting claims related to the workers' compensation programs from 2001 and 2002.

## II. DISCUSSION

The defendants make several arguments in support of their dismissal motion. The common thread in these arguments is that this case is duplicative of the pending state-court litigation and thus should be dismissed.

### A.

The defendants first argue that this case should be dismissed pursuant to Alabama's "abatement statute," which provides as follows: "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times." 1975 Ala. Code § 6-5-440.

This statute, therefore, "state stands for the proposition that a person cannot prosecute two suits at

the same time, for the same cause against the same party." Johnson v. Brown-Service Insurance, 307 So.2d 518, 520 (Ala. 1974). "The purpose of the rule is to avoid multiplicity of suits and vexatious litigation." Id. The statute treats a defendant asserting a counterclaim as a plaintiff and thus may bar that defendant from asserting the same claim in another, simultaneous or later lawsuit. Ex parte Parsons & Whittemore Alabama Pine Construction, 658 So.2d 414, 419 (Ala. 1995) ("§ 6-5-440 also acts to bar a subsequent action by a party who first appeared as the defendant in a prior action"); Penick v. Cado Systems of Central Alabama, 628 So.2d 598, 599 (Ala. 1993) (holding that "a compulsory counterclaim is an 'action' for purposes of Alabama Code 1975, § 6-5-440").

Alabama courts have held that § 6-5-440's phrase "courts of this state" includes federal courts. See Ex Parte David H. Myer, 595 So.2d 890, 892 (Ala. 1992). As a result, "a state court action can be abated if there is

[p]ending a federal court action involving the same cause against the same party." Johnson, 307 So.2d at 520. However, the defendants here confront this federal court with the opposite question: whether a federal action can be abated in favor of a state action based on § 6-5-440. In support of this contention, the defendants rely on two federal district court opinions: Simmons v. Pulmosan Safety Equipment, 471 F. Supp. 999 (S.D. Ala. 1979) (Thomas, J.), and Central Reserve Life Insurance v. Kiefer, 211 F.R.D. 445 (S.D. Ala. 2002) (Butler, J.).

The Simmons court stated that: "While no one challenges the applicability of this state procedural statute in a diversity suit in a federal district court, this Court agrees with the decision in Seaboard Finance Co. v. Davis, 276 F.Supp. 507 (N.D. Ill. 1967), wherein that Court, after a lengthy discussion of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny (citations omitted), concluded that an Illinois statute, substantially identical to the

5

one in question here, would prevail over the conflicting federal practice in the absence of any overriding federal considerations. Concluding that the Alabama statute is applicable, this Court must now decide if Section 6-5-440 requires the abatement of this present action." Simmons, 471 F. Supp. at 1001. Expressly relying on Simmons, the Kiefer court later found "Alabama Code § 6-5-440 to apply to diversity suits." Kiefer, 211 F.R.D. at 451. Therefore, at the heart of both the Simmons and Kiefer holdings was the reasoning of the United States District Court for the Northern District of Illinois in Seaboard that it should apply an Illinois statute similar to § 6-5-440.

The Seventh Circuit Court of Appeals has now expressly held that a federal court sitting in diversity should not apply 735 ILL. COMP. STATT. 5/2-619(a), the Illinois statute at issue in Seaboard. AXA Corporate Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272 (7th Cir. 2003). Relying on Erie and Colorado River

<u>Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the appellate court reasoned:

> "The overriding issue is whether this statute ... is the kind of law that a federal court sitting in diversity must apply, or if it is sufficiently procedural in nature that the federal court must turn instead to the analogous federal rules. This is often referred to as the distinction between 'substantive' issues and 'procedural' issues in cases applying the doctrine first announced in <u>Erie</u>, although both those terms should be understood as shorthand for a more complex inquiry. That inquiry requires courts to refer to the twin aims of the <u>Erie</u> doctrine, which are to discourage forum-shopping and to avoid the inequitable administration of laws. ...
>
> "There can be no doubt that both § 2-619(a)(3) and the <u>Colorado River</u> doctrine address the general problem of duplicative litigation. Under <u>Colorado River</u>, a federal court may stay or dismiss a suit when there is a concurrent state court proceeding and the stay or dismissal would promote 'wise judicial administration.' 424 U.S. at 818, 96 S.Ct. 1236. Substantially the same parties must be litigating the same issues contemporaneously in the two (or more) fora. (It may be worth noting that the federal courts do not face the same problems if the parallel litigation

is in another federal court, because devices such as 28 U.S.C. § 1404(a) and 28 U.S.C. § 1407 exist for the total or partial consolidation of related cases from different districts.) Colorado River then goes on to outline numerous factors that the court should consider as it weighs what step is appropriate for the particular situation.

"Section 2-619(a)(3) addresses precisely the same problem. The choice Illinois has made, however, is different from the choice the federal courts have made. For example, the dismissal provisions of the state statute are construed liberally, while the Supreme Court has made it clear that Colorado River abstention must be reserved for exceptional circumstances. 424 U.S. at 813, 96 S.Ct. 1236. This difference would give rise to substantial variation in outcomes between federal and state litigation, which might suggest that § 2-619(a)(3) should be applied by a federal court in a case governed by state law, in order to avoid forum shopping. ...

***

"In our view, the problem addressed by § 2-619(a)(3) is closely akin to topics such as forum non conveniens, lis pendens, and venue statutes. Each of those areas addresses an organizational matter that is governed by the law of the sovereign that established the

8

forum. In the case of a federal court, that sovereign is obviously the United States. We see no way for a federal court simultaneously to follow the Supreme Court's Colorado River doctrine and to apply the rule of § 2-619(a)(3). Given that conflict, and given the procedural nature of this problem, we conclude that the state statute should not have played any role in the decision whether to retain or dispose of this litigation."

AXA Corporate, 347 F.3d at 276.

The Seventh Circuit's reasoning applies with full force against application of Alabama's § 6-5-440 by this court, sitting in diversity, to the plaintiffs' case. This court therefore rejects that holdings in Simmons and Kiefer and holds instead that, for a district court sitting in diversity, § 6-5-440 should "not ... play[] any role in the decision whether to retain or dispose of ... litigation.[1] Id. The defendants' § 6-5-440 argument is without merit.

---

1. This court need not reach the difficult question of whether the plaintiffs in this case are the same as the defendant in the state case, as Alabama's abatement statute would require.

9

B.

The defendants also contend that the plaintiffs should be prevented from bringing their claims because of judicial estoppel. Judicial estoppel is an equitable doctrine designed to prevent a party from asserting a position in later proceedings that is inconsistent with a position upon which that party prevailed in an earlier proceeding. See, e.g., New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001); Middletown v. Caterpillar Industrial, 979 So.2d 53, 60-61 (Ala. 2007).

The defendants argue that the plaintiffs cannot assert claims for the 2001 and 2002 periods because their parent company, Continental, has already asserted the same claims for those same policy periods in the state litigation. These positions would be inconsistent, it is argued, because in the state case Continental asserts the right to the claims at issue and, in the this case, the plaintiffs contend to have that right; this is inconsistent, it is said, because the defendants are

faced in one case with a parent company that alleges it owns rights under certain policies while, in another case, subsidiary companies maintain that they are legally distinct from that parent company and may therefore assert those same rights.[2] The danger (for the purposes of judicial estoppel) is that, if both Continental and the plaintiffs prevail in their respective suits, the state and federal courts will have reached inconsistent

---

2. A number of related inconsistencies and contradictions can be found in the submissions filed by the plaintiffs. For example, they argue that, while Continental issued the workers' compensation coverage to Skilstaf from 1996-2000, "American Casualty issued the workers compensation and related policies" in 2001 and both Continental and the plaintiffs issued the policies for 2002. Pl.'s Brief (Doc. 10) at 4-5. Indeed, the policies attached by the plaintiffs indicate American Casualty as the sole beneficiary of the security requirement for the 2001 policy and the sole CNA company issuing the policy. However, the state-court counterclaim indicates that Continental had sued for precisely those claims, referring to them explicitly. This is not surprising because it seems that, until this suit was filed in 2008, all the parties were operating under the assumption that there was no distinction between Continental and the plaintiffs. Essentially the same policies were issued in roughly the same format from 1996 through 2002.

positions with respect to who has rights under the 2001 and 2002 policies.

Judicial estoppel is inappropriate in this case. The doctrine requires a party to have been <u>successful</u> in the prior proceedings. See <u>New Hampshire</u>, 532 U.S. at 750; <u>Middleton</u>, 979 So.2d at 61. Here, Continental has not previously succeeded in its claims to have enforceable rights with respect to the policies from the 2001 and 2002 period. The defendants argue only that Continental has asserted its right to those claims and that the state-court case has subsequently continued without resolution. Thus, even assuming that the sets of claims in the two cases are identical[3] and that the plaintiffs

---

3. The two cases involve the same overall insurance programs--all issued under the corporate name "CNA"--and the same underlying claims and conduct. The plaintiffs first asserted that this suit involves different claims because it refers to programs from 2001 and 2002, whereas Skilstaf's original state-court complaint covered only 1996 through 2000. However, the defendants correctly point out in response that Continental's 2004 counterclaim expressly implicated the 2001 and 2002 insurance programs. Moreover, Skilstaf argues that the entity that it did business with always operated under
(continued...)

are the same "party" as Continental for estoppel purposes, without indication that Continental has prevailed in its contention that it is entitled to these claims, it is impossible to declare that the state court has been "misled"; there is "no risk of inconsistent court determinations. New Hampshire, 532 U.S. at 750.

---

3. (...continued)
the same name ("CNA") from 1996 through 2002. Similarly, the plaintiffs also argued, at least at first, that this litigation concerns "exposure buyback policies" in addition to the letter of credit and certificates of deposit that constituted the security requirements for the policies in prior years. However, the 2004 counterclaim filed by Continental, in addition to specifically mentioning the 2001 and 2002 policies, specifically mentions exposure buyback policies. It was not until their second brief that the plaintiffs advanced the new theory that both Continental and they were providing separate workers' compensation policies for the same time periods. However, even this new argument, inconsistent with what the plaintiffs previously argued, does not explain other inconsistencies, such as why Continental asserted claims for the 2001 period (the period for which policies were apparently issued by American Casualty Company) in the state-court litigation. The information before the court suggests that the current suit arose from the same transaction and occurrence as the claims in state court, including Continental's 2004 counterclaim. Indeed, no party suggests how any of the alleged breaches or damages differ, and the claims clearly arise from the same insurance policies executed under the CNA umbrella.

Judicial estoppel is thus the wrong mechanism to address the defendants' ultimate concern of duplicative recovery.

Moreover, to make their argument, the defendants must argue that Continental and the plaintiffs are essentially the same party--after all, judicial estoppel applies only when the <u>same party</u> attempts to prevail on inconsistent theories in separate litigation. If, however, Continental and the plaintiffs should indeed be considered the same party (as defendants argue), there is actually no danger of double recovery.[4] If they are to be

---

4. The court will not decide the issue of whether the plaintiffs and their parent corporation, Continental, should be considered the same party in these circumstances. The conduct of the parties throughout their relationship and throughout the litigation suggests that the parties were treating them as the same company. However, the some of the insurance policies attached to the plaintiffs' brief in opposition indicate that "CNA" refers to a collection of related corporate entities. Doc. No. 10.* Indeed, some of those policies explicitly indicate that several different entities, including the plaintiffs and Continental, were somehow involved in the insurance programs. Wholly owned subsidiaries are generally considered separate corporate entities, but courts must be careful not to let corporations unfairly take advantage of the corporate form by, for instance, creating wholly owned subsidiaries that also do business
(continued...)

considered different parties, then judicial estoppel cannot apply, and the defendants will have to employ other judicial mechanisms in either the state litigation or in this litigation to ensure against whatever harms may come from the litigation strategy of Continental and its subsidiaries.

C.

Finally, the defendants urge the court to abstain from this case pursuant to the considerations discussed in Colorado River. The Supreme Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Construction, 460 U.S. 1, 15 (1983) (quoting Colorado River, 424 U.S. at 818). Given this

---

4. (...continued)
under the same corporate names and are, in important respects, functionally equivalent to the parent corporation, and then using those subsidiaries to file simultaneous legal actions whenever it seems advantageous.

general rule, a federal court will abstain only in "exceptional circumstances" because abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. at 14, 16.

The Eleventh Circuit has held that, "the Colorado River doctrine requires federal courts to consider six factors in determining whether abstention in favor of a concurrent state proceeding is appropriate: (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties." TranSouth Financial v. Bell, 149 F.3d 1292 (11th Cir. 1998). While the application of these factors is not rigid and no precise weighting is mandated, a court

should employ a "heavy bias" in favor of exercising its jurisdiction. Id. "Only the clearest of justifications will warrant dismissal." Moses H. Cone, 460 U.S. at 16 (emphasis in original).

The first two factors do not counsel in favor of abstention. No court has assumed jurisdiction over any property, and neither party has suggested that the federal forum is any more inconvenient than state court. As for the rest of the factors, while some of them could point in favor of exercising jurisdiction (the state-court suit was filed long before this nascent federal litigation and state law governs the workers' compensation dispute), the defendants have not provided sufficient information or argument to enable this court to justify abstention under the "exceptional circumstances" required by Colorado River and its stingy progeny.

The defendants urge abstention in a very short section at the end of their brief; they essentially just

17

recite the relevant factors from Moses H. Cone without, for example, acknowledging that this federal suit involves ostensibly different parties (given that the plaintiffs are technically not parties in the state suit and, moreover, that PACA is not a plaintiff in that suit). Thus, it is not obvious, as defendants assume, that the rights of the parties will be adequately protected by the state-court proceedings. At the very least, this case now involves questions not squarely before the state court--namely, the extent to which the subsidiaries, given the context, should be treated as distinct entities with respect to the disputed policies. Equally important, unlike in Colorado River, there is no strong federal policy against piecemeal litigation in a specialized area (such as water rights). Here, the mere fact that different litigation among several companies may concern the same broad contractual insurance issues does not raise the same specter of problematic piecemeal resolution of a wide range of complicated claims; indeed,

the danger of piecemeal litigation, if any, is no different here than it would be in any case that involves parallel suits.

In the end, the defendants have not shown enough to remove this case from the standard category of cases in which potentially duplicative proceedings are brought in state and federal courts. Unless very good reasons exist for placing a case outside this category, the Supreme Court has directed district courts not to abdicate their responsibilities.

***

Accordingly, it is ORDERED that defendants Skilstaf, Inc., and PACA, Inc.'s motion to dismiss (doc. no. 5) is denied.

DONE, this the 18th day of March, 2010.

    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE